IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SWCAP, LLC, | Case No. 3:08 CV 2123 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Brad C. Mathewson, et al., | |
| Defendants. | |

**INTRODUCTION**

Pending before the Court are Plaintiff SWCAP, LLC's Motion for Summary Judgment (Doc. No. 32) and Defendants Brad and Jill Mathewson's Motion for Summary Judgment (Doc. No. 33). Also pending is Defendants' Motion to Strike (Doc. No. 43). For the reasons stated below, the Court grants summary judgment for Defendants, grants in part and denies in part summary judgment for Plaintiff, and denies as moot Defendants' Motion to Strike.

**BACKGROUND**

This case is about a contract for the sale of a 200' x 115' parcel of unimproved land. Plaintiff is the seller and Defendants were to be the purchasers. Plaintiff claims Defendants breached the contract, and Defendants respond with counterclaims of fraud and breach of duty.

Plaintiff owns roughly 2.25 acres of real estate at 5200 Milan Road, Sandusky, Ohio 44870. A large portion of the property is occupied by a Chili's restaurant and the parking lot servicing the restaurant. The remainder of the property is the subject of this litigation -- a tract of undeveloped land

(the "Chili's Parcel").  Defendants are a husband and wife who own and operate a number of car wash and laundry facilities in northwestern Ohio under a general partnership.

Adjacent to the Chili's Parcel are two residential lots owned by the Kowalski family and collectively known as 5306 Milan Road, Sandusky, Ohio 44870 (the "Kowalski Property"). Sometime in 2007, the Kowalski Property was listed for sale with Hoty Enterprises, Inc., a commercial real estate brokerage.

A broker from Hoty Enterprises believed it beneficial to combine the Chili's Parcel and Kowalski Property for sale.  In September 2007, Plaintiff agreed to list the Chili's Parcel for sale with Hoty Enterprises.  The Chili's Parcel was advertised by Hoty Enterprises as a parcel which may be combined with an adjoining parcel to create a single 1.5-acre parcel.

In late 2007, Defendants were looking for a location to develop and build a new combination coin-operated laundry and car wash facility in Sandusky.  Defendants identified the Kowalski Property and Chili's Parcel as a potential location and submitted a letter of intent to Hoty Enterprises.

After some negotiation between Plaintiff and Defendants, on March 14, 2008 the parties executed a real estate contract for the sale of the Chili's Parcel ("the Contract," Doc. No. 3, Ex. A). The Contract calls for Defendants to pay a purchase price of $390,000, which represents $8,000 in earnest money and $382,000 to be paid at or before closing.  Under the terms of the Contract, closing was to occur within ninety days; thus closing was to occur no later than June 12, 2008.

The Contract also contains several contingencies to the contemplated sale.  The three contingencies relevant to the pending Motions are: (1) the financing contingency; (2) the lot split contingency; and (3) the Kowalski Property contingency.

- <u>The financing contingency</u> - the Contract is contingent on Defendants' ability to obtain financing "for both acquisition of the property and construction of a car wash and/or laundry facility" by May 13, 2008 (Contract § II).

- <u>The lot split contingency</u> - the Contract is contingent on Defendants obtaining a split of and a legal description of the Chili's Parcel by May 13, 2008 (Contract § VII(b)).

- <u>The Kowalski Property contingency</u> - the Contract is contingent on Defendants closing on the purchase of the Kowalski Property prior to the June 12, 2008 closing deadline (Contract § VII(f)).

The Contract provides that these contingencies serve to terminate the Contract *only* if Defendants provide written notice to Plaintiff of the contingency failure before the deadline specified for that contingency (Contract § VII).

On May 12, 2008, Defendants hand-delivered a letter to Plaintiff's real estate agent, Kula Hoty Lynch. The letter, authored by Defendants themselves, references Sections II and VII of the Contract and states "due to the current credit crisis we have not been able to secure financing within the contract's time frame" (Brad Mathewson Depo., Ex. 7). The letter also expresses hope that Defendants could obtain financing and that the deal could be completed. After Defendants delivered notice of the failure of the financing contingency, Defendants continued their efforts to obtain financing on the Chili's Parcel. At one point, Defendants proposed extending the Contract, however the parties were unable to agree to the terms of an extension or a new purchase contract.

The parties did not close on the Chili's Parcel on June 12, 2008. On June 17 and July 30, 2008, Plaintiff sent letters to Defendants advising them that Plaintiff considered Defendants to be in breach of the Contract. On August 4, 2008, Defendants sent Plaintiff a letter explaining that the Contract had expired and that they were terminating efforts to complete the deal (Brad Mathewson Depo., Ex. 18). Plaintiff filed this lawsuit in September 2008.

3

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

**Breach of Contract**

Plaintiff contends Defendants breached the Contract by failing to close on the Chili's Parcel on June 12, 2008. Defendants present three arguments in defense. First, Defendants contend their May 12, 2008 letter terminated the Contract. Second, Defendants argue the Contract is voidable because of fraud in the inducement. Defendants allege Plaintiff fraudulently failed to notify them of the existence of a number of deed restrictions which made the Chili's Parcel unsuitable for Defendants' intended purpose. Finally, Defendants contend their performance is excused because performance of the Contract was a legal impossibility as of June 12, 2008. Defendants argue that their inability to purchase the Kowalski Property made purchase of the Chili's Parcel a legal impossibility because county and township regulations prohibited such a conveyance. The Court need only address the first argument to resolve this claim.

4

Defendants argue their May 12, 2008 was effective to terminate the Contract under Sections II and VII of the Contract.  Section II states:

Section II - Approval of Financing:

The consummation of this transaction as contemplated by the terms of this agreement is subject to the Purchasers obtaining final confirmation and formal written approval from a lending institution at prevailing rates and terms, for both acquisition of the property and construction of a car wash and/or laundry facility, no later than sixty (60) days after the Effective Date.  Purchasers' failure to terminate this Agreement based upon failure of the condition identified in this Section II, within said sixty (60) days shall constitute a waiver of said condition.

The portion of Section VII of the Contract which requires written notification of a contingency failure states:

Purchasers shall be entitled to terminate this Agreement and receive the Earnest Money Down, provided Purchasers terminate this Agreement in a writing delivered to Seller on or before the respective dates set forth in Section II and Section (a)-(f) above for each respective condition . . . .  Purchasers' failure to terminate this Agreement in writing within such time period shall be deemed to be a waiver of any such condition and in such case, the Earnest Money Down will be non-refundable and Purchasers and Seller shall proceed to closing.

Thus, in order to terminate the Contract because of Defendants' failure to obtain financing, Defendants were required to provide written notice of the failure to Plaintiff within sixty days of the March 14, 2008 Contract, or by May 13, 2008.

Defendants' hand-delivered May 12, 2008 letter reads in its entirety:

Sirs:

In regards to Section II and Section VII, G:

Due to the current credit crisis we have not been able to secure financing within the contract's time frame.  Currently, we do have three financial institutions looking favorably at the project.

5

> Croughan Colonial Bank has taken the application before their president/CEO, Steven Futrell and their chief lending officer, Thomas Elder. These gentlemen actually came to our existing facility at Port Clinton, Ohio. After their visit, the loan proposal went to the executive loan committee. We have been told that the executive loan committee is the most difficult from which to obtain approval. This committee gave an approval and is sending it on to the board of directors. It is our understanding this board of directors is to meet the week of May 12, 2008.
>
> Nancy Beckwith, senior business development manager of UPS Capital Business Credit reviewed the loan request and deemed it qualified to be sent to her board of directors and has done so this past week. Ms Beckwith is a member of this board and has significant input to the decision making process.
>
> David Needs, vice president of US Bank SBA Division, has requested a meeting with us this Friday, May 16, 2008. Mr. Needs indicated he would lay out a financing proposal at this meeting.
>
> At this point, we are not in control of conditions, appraisals or time frames. We would definitely like to proceed with this project. We respectfully ask this contract be extended.
>
> Sincerely,
>
> /s/
> Brad and Jill Mathewson

(Brad Mathewson Depo., Ex. 7).

Construction and interpretation of a written contract are questions of law. *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313 (1996). "The purpose of contract construction is to discover and effectuate the intent of the parties," and "the intent of the parties is presumed to reside in the language they chose to use in their agreement." *Id.* Extrinsic evidence is admissible to ascertain intent only when the contract terms are unclear or ambiguous. *Id.* at 314.

Here, the contract language is clear and unambiguous. Therefore, it is a question of law, and extrinsic evidence is inappropriate. *See Graham*, 76 Ohio St. 3d at 313; *Kellie Auto Sales, Inc. v. Rahbars & Ritters Enters., LLC*, 172 Ohio App. 3d 675, 682-83 (2007) ("If the contract is clear and

6

unambiguous, its interpretation is a matter of law, and there is no issue of fact to determine. However, where the contract language is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact."). The only question is whether Defendants' letter adhered to the termination procedure in the Contract.

"[I]f a party who has a power of termination by notice fails to give the notice in the form and at the time required by his reservation, it is ineffective as a termination unless such requirements are waived by the parties." *Central Ohio Co-Op Milk Producers, Inc. v. Rowland*, 29 Ohio App. 2d 236, 239 (1972). In *Wagoner v. Leach Co.*, No. 17580, 1999 WL 961166, at *6 (Ohio Ct. App. Jul. 2, 1999), the court held that "[w]here a contract requires written notice of termination, a writing that is sufficient to give such notice ought to satisfy the contractual requirement. It should not be necessary for a party to recite any particular 'magic words' unless the contract so specifies."

This Court finds Defendants' May 12, 2008 letter provided written notification effective to terminate the Contract pursuant to the Contract terms. The letter, authored by lay persons, referenced the sections of the Contract concerning the financing contingency and the written notice requirement for termination. The letter was delivered to Plaintiff's agent the day prior to the deadline for providing such written notification. The Contract did not require Defendants to include any "magic words." The Court believes the only reasonable interpretation of the letter is that Defendants were providing notice of the failure of a contingency, as required by the Contract for termination.

Plaintiff's argument to the contrary lies in the last line of the letter where Defendants express hope that they will ultimately be able to procure financing and complete the purchase. This expression of continued interest in the property does not defeat the fact that the letter satisfied the

7

termination terms of the Contract. The Contract terminated on May 12, 2008, and at that point Plaintiff was free to sell to another buyer.

Similarly, Plaintiff's reference to Defendants' actions after May 12 has no bearing on termination of the Contract. The letter on its face complied with the termination provisions of the Contract, and subsequent discussions never resulted in an enforceable agreement.

Plaintiff argues the May 12 letter is ambiguous and reasonably susceptible to more than one interpretation. In support of this argument, Plaintiff cites *McIntyre v. Lake County Joint Vocational Sch. Dist. Bd. of Educ.*, No. 96-L-002, 1996 WL 761992 (Ohio Ct. App. Dec. 31, 1996). That case, however, is easily distinguishable. The issue in *McIntyre* was whether the school district provided adequate termination notice to a teacher as required by state statute. *Id.* at *6-9. The notice sent to the teacher used the word "suspend" rather than "terminate" and cited the wrong section of the statute. *Id.* The court concluded the notice was ambiguous, and therefore summary judgment was inappropriate. *Id.* at *9. Here, in contrast, there is no confusion about the meaning of the letter or the portion of the Contract to which it refers.

Plaintiff also argues Defendants mistakenly believed the Contract was self-terminating, i.e., the Contract would terminate on May 13, 2008 if Defendants failed to obtain financing. Under this view, Defendants' May 12, 2008 letter was a request to Plaintiff that the Contract not terminate the following day but that it continue despite the failure of the financing contingency. This argument is also unavailing. The Contract is clear that written notice is required to terminate for reason of a contingency failure. Defendants reference that section in their letter. The timing and content of the May 12 letter had a singular purpose directed at the Contract contingency.

8

Efforts by the parties subsequent to that date to revive the deal are not relevant to the Court's inquiry. Those subsequent efforts did not negate the clear termination of the Contract. Nor, as it turns out, did they result in an agreement with new terms which could form the basis for a claimed breach.

Because the Court finds Defendants successfully terminated the Contract, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment with respect to the breach of contract claim.

**Motion to Strike**

In light of the Court's ruling with respect to Plaintiff's breach of contract claim, Defendants' Motion to Strike (Doc. No. 43) is denied as moot.

**Fraud**

Defendants counterclaim, alleging Plaintiff committed fraud by failing to disclose the existence of deed restrictions on the Chili's Parcel. Under Ohio law, the elements of fraud are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 55 (1987).

However, under Ohio law Plaintiff had no duty to affirmatively point out the deed restrictions on the Chili's Parcel. *See, e.g., McMullian v. Borean*, 167 Ohio App. 3d 777, 782 (Ohio Ct. App. 2006) (seller of parcel had no duty to disclose existence of sewer easement to purchaser when the easement was discoverable by a reasonable public records inspection). The deed restrictions at issue here were easily discoverable through a title search. Furthermore, there is no evidence in the record that Plaintiff made representations that the Chili's parcel was without restrictions.

9

Because there is no record evidence to support Defendants' fraud counterclaim, the Court grants summary judgment for Plaintiff.

**Defendants' Breach of Duty of Good Faith Claim**

Defendants claim Plaintiff failed to act in good faith in negotiating an extension to the Contract. Under Ohio law, "parties to a contract are bound toward one another by standards of good faith and fair dealing. However, this does not stand for the proposition that breach of good faith exists as a separate claim. Instead, good faith is part of a contract claim and does not stand alone." *Pappas v. Ippolito*, 177 Ohio App. 3d 625, 642 (2008) (citing *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at *5 (Ohio Ct. App. Mar. 16, 2006)). Thus, absent a breach of contract claim, a claim for breach of duty of good faith cannot stand.

Here, Defendants make no corresponding contract claim to support their breach of good faith claim. Furthermore, the Court finds there is no evidence in the record to suggest Plaintiff acted in bad faith during renegotiations of the Contract. Therefore, the Court grants summary judgment for Plaintiff on this counterclaim as well.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. No. 32) is denied in part and granted in part, Defendants' Motion for Summary Judgment (Doc. No. 33) is granted, and Defendants' Motion to Strike (Doc. No. 43) is denied as moot.

In light of this Court's conclusions, and under the explicit terms of the Contract, Defendants are entitled to their $8,000 earnest money deposit (*see* Contract § VII: "Purchasers shall be entitled to terminate this Agreement and receive the Earnest Money Down, provided Purchasers terminate this Agreement in a writing delivered to Seller on or before the respective dates . . . and provided Purchasers are not otherwise in default under this Agreement."). Defendants are also entitled to

10

reasonable interest on the $8,000, accruing from September 4, 2008 (one month after Defendants' August 4, 2008 letter indicating definitively that they no longer were pursuing the purchase).

Finally, Section X of the Contract outlines which party will bear costs in the event of litigation: "If litigation arises out of or in connection with this Agreement, the prevailing party shall be entitled to recover its attorney fees." Because both Plaintiff and Defendants are prevailing parties in this litigation (Defendants prevail on the breach of contract claim; Plaintiff prevails on the counterclaims), this Court declines to award attorney fees. *See Witt v. Realist, Inc.*, 118 N.W.2d 85, 96 (Wis. 1962); *Szost v. Dykman*, 233 N.W. 203, 205 (Mich. 1930); *Gen. Cable Corp. v. Citizens Utils. Co.*, 555 P.2d 350, 354 (Ariz. Ct. App. 1976).

IT IS SO ORDERED.

                                                   s/ *Jack Zouhary*
                                                   JACK ZOUHARY
                                                   U. S. DISTRICT JUDGE

                                                   September 9, 2009